IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,453

STATE OF KANSAS,
*Appellee*,

v.

RYAN ROBERT JOHNSON,
*Appellant*.

SYLLABUS BY THE COURT

1.

If a criminal defendant challenges sufficiency of the evidence on appeal in a case in which a district court instructed a jury on alternative means of committing a crime, the State must establish that it presented sufficient evidence of both alternatives.

2.

When a criminal defendant challenges the sufficiency of evidence on appeal, an appellate court reviews the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. The appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations about witness credibility.

3.

The provision in K.S.A. 2018 Supp. 21-5415(a)(1), allowing for a conviction if a threat of violence is made in reckless disregard for causing fear, is unconstitutionally overbroad because it punishes conduct that is constitutionally protected under some circumstances.

1

4.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged.

5.

A constitutional error is harmless if the State can demonstrate beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 15, 2017. Appeal from Montgomery District Court; JEFFREY D. GOSSARD, judge. Opinion filed October 25, 2019. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and the case is remanded with directions.

*Clayton J. Perkins*, of Capital Appellate Defender Office, was on the briefs for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  A jury convicted Ryan Robert Johnson under the Kansas criminal threat statute of intentionally placing another in fear *or* of making a threat in reckless disregard of causing fear. He appealed, and we consider two issues.

First, does sufficient evidence support Johnson's conviction for making a criminal threat? Because Johnson's conviction rests on the alternative means of committing the crime by acting either intentionally or recklessly, we must examine the sufficiency of the evidence relating to both mental states. Upon review of the record, we hold the evidence is sufficient.

Johnson's second issue asks: Is the reckless criminal threat alternative in Kansas' criminal threat statute, K.S.A. 2018 Supp. 21-5415(a)(1), unconstitutionally overbroad? We fully discuss this issue in *State v. Boettger*, No. 115,387, 310 Kan. __, __ P.3d __ (2019), (this day decided), and hold that the making-a-threat-in-reckless-disregard alternative is unconstitutionally overbroad. Applying that holding here, we reverse Johnson's conviction and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

The Montgomery County Sheriff's office received a request to check the welfare of Vickie Walker because of allegations that she was being abused by Johnson, her son. An officer called Walker, who reported that Johnson had been causing problems in her home and she was afraid for her safety. But she was "pretty nonspecific," so the officer took no action beyond taking the report. A few nights later, Walker called 911 and requested an officer come to her home.

Deputy Jacob Garcia responded to the call. Johnson was not present when Deputy Garcia arrived. Walker told Deputy Garcia she came home and found Johnson and his wife arguing. She reported that her daughter-in-law went into another room and locked the door to get away from Johnson, but he kicked the door open. Deputy Garcia noticed a metal clasp on the door was broken and there was a crack running down the door as if it had been forced open. He also saw damage to the door frame. He took pictures of the

damage that the jury viewed during the trial. While Deputy Garcia was at the house, Johnson called his mother. The deputy asked Johnson to return, but Johnson stayed away.

The next morning Johnson returned to Walker's home and another incident occurred that led to another 911 call. Deputy Christopher Bishop and another officer responded. Deputy Bishop interviewed Walker and recorded the interview on his body camera. She reported that Johnson had forced his way into her home, ripped the phone out of the wall, and said, "'Try to call the sheriff now, bitch.'" She also stated that Johnson told her, "'Bitch, if I'm going to be on the streets, then you're going to be on the streets because I'm going to burn your shit up. Then I'm going to be back this afternoon and you ain't going to like what I'm bringing for you.'" According to Walker, Johnson then said, "'I hate you, Mom, you fucking bitch. I wish you would die, but don't worry about it because I'm going to help you get there. I'm going to fucking kill your ass. I hate what you do to me.'"

Deputy Bishop used the recording from his body camera to write his report. He played and paused the video, rewinding it several times to ensure he accurately quoted Walker's statements. The video was lost before trial, however. The other sheriff's officer who responded to the call heard the conversation between Walker and Deputy Bishop. He wrote a report either the same day or the day after the conversation, noting that Walker said Johnson pulled the phone out of the wall and threatened to kill her and burn her house down.

The State charged Johnson with one count of criminal damage to property based on the damage allegedly done to the door the night of the fight between Johnson and his wife. It also charged him with criminally threatening Walker the next day when he allegedly tore the phone off the wall and threatened to burn Walker's house and kill her. During Johnson's trial, both Walker and Johnson's wife downplayed the two incidents.

4

They both testified the family commonly threatened to kill each other but did not mean it. Walker also testified she did not recall what she said to any officer, other than telling Deputy Garcia she wanted to get Johnson out of her house. She explained that she took medicine that cause her to be confused and she could not remember what Johnson said to her.

Walker testified that at the time of this incident, Johnson had a broken neck and had a metal halo device screwed into the bones of his skull. He was in pain and taking pain medication. As a result, he often had angry outbursts. Walker said she grabbed the halo device during the first incident to try to stop the fight and hurt him in the process. At that time, he became angry with her and felt she was taking his wife's side.

Walker also testified that she heard the officers' testimony at trial and was confused by it because she did not remember what had happened or what she had said to the officers. She stated she would have been truthful with the officers and told them what she thought had happened to the best of her abilities. But she thought they may have misinterpreted what she said because she was in a highly excited state and had been discharged from the hospital two days earlier and was still under the effect of morphine.

Johnson denied breaking the door and said it had been broken for a long time. He admitted there had been an argument in Walker's home, but he claimed he did not threaten anyone. And he denied making the quoted threats. The jury heard a recording of Walker's first 911 call made the evening Johnson and his wife were fighting. The voices of a man and woman arguing can be heard on the recording. The woman can be heard saying that Johnson kicked the door open and threw the lock out the window. The man replied, "I didn't."

5

The jury acquitted Johnson of the criminal damage to property charge but convicted him of criminal threat. He was sentenced to 14 months' imprisonment with 12 months' postrelease supervision.

Johnson timely appealed. Before the Court of Appeals, he argued: (1) the district court erred when it denied his motion to dismiss based on the 180-day speedy trial requirement under the Interstate Agreement on Detainers; (2) the State did not present sufficient evidence to find Johnson guilty of criminal threat beyond a reasonable doubt; (3) the failure to give a voluntary intoxication jury instruction was clearly erroneous; and (4) the reckless form of criminal threat is unconstitutionally overbroad. The Court of Appeals held no trial errors occurred, and it affirmed Johnson's conviction and sentence. See *State v. Johnson*, No. 116,453, 2017 WL 6397060, at *1 (Kan. App. 2017) (unpublished opinion).

Johnson petitioned for this court's review of the Court of Appeals' decision. We granted his request but only in part. We have jurisdiction under K.S.A. 20-3018(b) (petition for review of Court of Appeals' decision).

ANALYSIS

In granting Johnson's petition in part, we accepted review of his second and fourth issues: Whether the evidence was sufficient and whether the reckless disregard provision in the criminal threat statute was constitutional.

*Sufficient evidence*

As noted, the State charged Johnson with intentionally or recklessly making a criminal threat. The district court instructed the jury on both mental states. And the jury

6

received a verdict form that simply asked for a determination of whether Johnson committed the crime of a criminal threat without asking the jury to indicate whether it unanimously concluded Johnson acted intentionally or recklessly. Johnson now argues the State must establish that the evidence of both means is sufficient to support the verdict because it charged him with alternative means of committing the crime, the court instructed on both means, and the State did not elect one means or the other. He then argues the State failed to meet that burden.

Johnson is correct on the first point about the State having to establish sufficient evidence of both mental states. By defining criminal threat as either an intentional or a reckless act, the Legislature created alternative means of committing the offense. When the district court has instructed the jury on alternative means of committing a crime, on appeal the State must establish that it presented sufficient evidence of both means to ensure the jury's verdict is unanimous. See *State v. Williams*, 303 Kan. 750, 759-61, 368 P.3d 1065 (2016). But we disagree with Johnson on the second point and, instead, hold that the State presented sufficient evidence of both alternative means.

"'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.'" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016).

The Court of Appeals panel correctly found that when viewed in a light most favorable to the State, the evidence supported Johnson's criminal threat conviction. Johnson asked the panel and now asks us to focus on Walker's inability to remember the

7

specific words of any threat he allegedly made. The panel appropriately rejected that narrow focus and discussed the multiple statements Walker made to the sheriff's officers about Johnson's actions and violent behavior. Although Walker did not recall these statements at trial, she did not dispute the accuracy of the officers' testimony. And she admitted she would have tried to be truthful when giving officers her statements.

The panel concluded the evidence of what Walker told officers at the time of the events showed Walker was, in fact, threatened by Johnson's statements. *Johnson*, 2017 WL 6397060, at *4. And in seeking our review, Johnson does not dispute that aspect of the panel's analysis. In fact, Johnson does not address any specific point in the panel's decision. Instead, he generally "argues the Court of Appeals erred for the same reasons argued in his initial brief." He essentially asks us, as he did the Court of Appeals, to reweigh the evidence. But appellate courts do not reweigh evidence. See *Dunn*, 304 Kan. at 822.

Here, when viewed in the light most favorable to the State, the language Johnson used and the circumstances in which he threatened to kill Walker and burn down her house provide sufficient evidence of either an intentional or a reckless threat. See *Williams*, 303 Kan. at 762-63 (intent to threaten can be inferred from the circumstances).

Focusing first on the sufficiency of the evidence that Johnson acted intentionally, the timing of the second incident provides compelling circumstantial evidence that Johnson intentionally threatened Walker. The evening before, Johnson had been fighting with his wife when his mother became involved. She, in turn, involved the sheriff's department, and although Johnson was not present when the officers arrived, he was aware they had investigated Walker's complaint. The next morning, Johnson pulled his mother's phone off the wall and expressed his anger about her talking to the officers and trying to get him out of her house. A reasonable jury could have concluded he acted with

8

the intent to keep his mother from (1) calling 911 again and (2) kicking him out of her house. To coerce her cooperation, he made threats of violence to "'burn [her] shit up'" and to "'kill [her] ass.'"

The time and context in which Johnson allegedly made these statements provides sufficient evidence to support a conviction for intentional criminal threat. A reasonable fact-finder could convict Johnson based on the evidence presented by the State.

As to the sufficiency of the evidence about recklessness, K.S.A. 2018 Supp. 21-5202(c) provides: "Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally." Thus, under this statute, because the State provided sufficient evidence that Johnson acted intentionally it also presented sufficient evidence of a reckless mental state.

The State presented sufficient evidence to support a conviction of either intentional or reckless criminal threat.

*Constitutionality of reckless criminal threat*

Johnson next challenges the constitutionality of the reckless threat provision of K.S.A. 2018 Supp. 21-5415(a)(1). He argues the provision is unconstitutionally overbroad. His arguments are nearly identical to those we addressed in *State v. Boettger*, 310 Kan. ___, ___ P.3d ___ (No. 115,387, this day decided).

As we explain more fully in *Boettger*, the United States Supreme Court has held that the government may regulate "true threats" without infringing on rights protected by the First Amendment to the United States Constitution. And that Court has stated: "'True

9

threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003). In *Boettger*, we hold that the reckless disregard provision encompasses more than true threats and thus potentially punishes constitutionally protected speech. The reckless disregard provision is thus overbroad and unconstitutional. *Boettger*, 310 Kan. at ___, slip op. at 22-28.

*Reversibility*

In *Boettger*, where the conviction was based solely on the reckless disregard provision, we reversed the conviction. 310 Kan. at ____, slip op. at 28. The question of reversibility is not as simple here because the jury's verdict rested on the alternative means of either an intentional or a reckless mental state. See *Williams*, 303 Kan. at 759-61. The State argues we should affirm the conviction because the evidence that Johnson acted intentionally was very strong. Johnson responds that the State failed to preserve that argument before the Court of Appeals. The preservation argument is not as straightforward as Johnson suggests, but we need not labor through an explanation of the point because we agree with his contention that his conviction must be reversed.

In reaching this conclusion, we apply the constitutional harmless error standard. In doing so, we reject the State's argument that the statutory standard should apply because the error implicates Johnson's statutory right to a unanimous verdict. See K.S.A. 22-3421; see also *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011) (explaining difference between statutory and constitutional harmless error standard). That argument ignores the potential implication of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

10

Due Process Clause implications arise because the jury convicted Johnson, at least in the alternative, of a statutory provision that is unconstitutional. And a person cannot be constitutionally convicted under a constitutionally invalid statute. See generally *Griswold v. Connecticut*, 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965). In addition, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Here, for Johnson's conviction to be constitutional, the State must have convinced the jury beyond a reasonable doubt that Johnson intentionally made the criminal threat. But it is unclear that the jury convicted Johnson on proof beyond a reasonable doubt that Johnson acted intentionally. We thus apply the constitutional harmless error standard.

A constitutional error is harmless if the State can show "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict." *Ward*, 292 Kan. 541, Syl. ¶ 6; see also *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (defining the constitutional harmless error standard). The State has not met that standard.

The district court instructed the jury on both forms of criminal threat and accurately recited the definitions of "intentionally" and "recklessly" in K.S.A. 2018 Supp. 21-5202(h) and (j). But neither the jury instructions nor the State's arguments steered the jury toward convicting Johnson based solely on one mental state or the other. Nor did the judge instruct the jury it had to agree unanimously on whether Johnson acted intentionally or recklessly. And the verdict form did not require the jury to make a specific finding. Thus, the record provides no basis for us to discern whether the jury concluded that the State had proved beyond a reasonable doubt that Johnson acted intentionally.

Nor, despite the State's argument, does a review of the evidence. The State asserts that given Johnson's threat to kill his mother, "[n]o jury would find this threat was anything other than intentionally made with the intent to place another in fear." But the State fails to address conflicting evidence at trial, particularly Walker's testimony that the family routinely threatened to kill each other but no one took it literally. Walker also testified she did not recall Johnson threatening to kill her or burn down the house. And she thought the officers may have misinterpreted what she said because she was in a highly excited state and had been discharged from the hospital two days earlier and was still under the effect of morphine. Walker also made it clear she was motivated to have her son leave her home. A reasonable juror could thus conclude she exaggerated the situation to obtain legal help in keeping her son away. Given these circumstances, a reasonable fact-finder may have determined there was some discrepancy between what Johnson said to Walker and what she reported to the officers.

The jury was free to determine Walker's credibility and decide what weight to give to her testimony. If it believed that Johnson did not intend such threats to be taken literally but that Walker was genuinely fearful when she called for law enforcement assistance, it could have believed the statements were made with a reckless disregard for whether they caused fear. See *State v. Raskie*, 293 Kan. 906, 920-21, 269 P.3d 1268 (2012) (recognizing jury's role in weighing conflicting statements and determining credibility). The State has not addressed this possibility and has not met its burden of proving the error harmless beyond a reasonable doubt.

Accordingly, we reverse Johnson's conviction, vacate his sentence, and remand the case to the district court for a new trial.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and the case is remanded with directions.

JOHNSON, J., not participating.

* * *

STEGALL, J., dissenting: I agree with the majority that the "provision in K.S.A. 2018 Supp. 21-5415(a)(1), allowing for a conviction if a threat of violence is made in reckless disregard for causing fear, is unconstitutionally overbroad" because it can punish constitutionally protected speech in some circumstances. Slip op., Syl. ¶ 3. But I would not reverse Johnson's conviction. Instead, borrowing from the modified harmlessness analysis articulated by Justice Nancy Moritz in *State v. Brown*, 295 Kan. 181, 216-28, 284 P.3d 977 (2012) (Moritz, J., concurring), I would find the constitutional error is harmless.

Certainly, as the majority notes, "a person cannot be constitutionally convicted under a constitutionally invalid statute." Slip op. at 11. So Johnson cannot be convicted of recklessly violating K.S.A. 2018 Supp. 21-5415(a)(1). And if that were the conviction we were reviewing the case would be simple and straightforward. As the majority points out, however, the "question of reversibility is not as simple here because the jury's verdict rested on the alternative means of either an intentional or a reckless mental state." Slip op. at 10. Again, I agree with the majority that in this circumstance, we must apply a constitutional harmless error standard and determine whether the State can show "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict." *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011); slip op. at 10-11.

13

To answer this question, the majority pivots back to a mode of analysis borrowed from our alternative means sufficiency test and asks how we can be sure the jury relied on the constitutional "intentional" portion of the statute rather than the unconstitutional "reckless" portion. The majority observes that "neither the jury instructions nor the State's arguments steered the jury toward convicting Johnson based solely on one mental state or the other." Slip op. at 11. And the jury wasn't instructed that it had to unanimously agree on either intentional or reckless conduct. Slip op. at 11. Finally, the verdict form did not require a finding by the jury either way. Slip op. at 11.

All this is true. In the face of such uncertainty, the majority turns to the evidence itself to discern whether a reasonable juror could have decided from the evidence that Johnson acted recklessly rather than intentionally. The majority essentially reasons that if there is any reasonable possibility that a single juror could have reached the conclusion that Johnson acted recklessly but not intentionally, then the State has failed to carry its burden to demonstrate beyond a reasonable doubt that the constitutional error did not contribute to the verdict. I agree that this is the question we must ask. I part ways with the majority only in its analysis of the evidence.

Because our analytical path here is significantly influenced by the reasoning that informs our alternative means sufficiency test, I would borrow from Justice Mortiz' modified alternative means harmlessness analysis set forth in her concurring opinion in *Brown*. It is true that the reversibility question presented here is not strictly an alternative means question—there are significant differences, particularly because here the State carries a higher burden in order to sustain the conviction. Still, when a jury is instructed on an unconstitutional alternative means of committing a crime, if there is "sufficient evidence of [a constitutional] alternative means but *no* evidence or argument regarding [the unconstitutional] means" then there is "no possibility of jury confusion[]" and we can

14

be confident that the error did not contribute to the verdict. *Brown*, 295 Kan. at 216 (Moritz, J., concurring).

The significant overlapping inquiry in both instances is jury confusion or, put differently, appellate uncertainty about which of two possible routes to conviction were taken by the jury. As the majority has it, "it is unclear that the jury convicted Johnson on proof beyond a reasonable doubt that Johnson acted intentionally." Slip op. at 11. Relying on Justice Moritz' *Brown* approach, I disagree. Instead, after a thorough review of the evidence below, I conclude there is no evidence that Johnson acted recklessly. The evidence relied on by the majority to suggest a reasonable juror could have convicted Johnson of recklessly making a threat is actually evidence of innocence, not recklessness.

As recounted earlier in the majority opinion, the State presented significant evidence that Johnson acted intentionally. One witness testified that Walker told him Johnson "specifically threated to kill [Walker] and burn down the house." Another detailed Johnson's comment to Walker, "I wish you would die, but don't worry about it because I'm going to help you get there. I'm going to fucking kill your ass." The State's closing arguments likewise only presented an intentional threat case to the jury.

Crucially, Walker's testimony that her family used the term "kill" colloquially would suggest that Johnson's statement was not a threat at all. Similarly, her testimony that she did not remember Johnson making any threatening statements is evidence of innocence, not recklessness. Walker's statements that police misunderstood her and that she was on morphine when she spoke with detectives, along with any conclusion that she was motivated to "exaggerate[] the situation to obtain legal help," all present evidence that no threat was actually made. Slip op. at 12.

Certainly it is true that "[t]he jury was free to determine Walker's credibility and decide what weight to give to her testimony." Slip op. at 12. But in my view, the evidence is not consistent with the hypothetical possibility relied on by the majority that Walker may have been "genuinely fearful" but that "Johnson did not intend [his] threats to be taken literally." Slip op. at 12. Instead, had any reasonable juror believed Walker, the only conclusion that juror could have reached based on the evidence would have been that Johnson was not guilty. Because the State presented no evidence of a reckless threat to the jury, we can be confident that the jury convicted Johnson of making an intentional threat. The constitutional error did not contribute to the verdict. I would affirm Johnson's conviction.

BILES, J., joins the foregoing dissenting opinion.