NOT DESIGNATED FOR PUBLICATION

No. 127,657

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MICHAEL A. CHIGHISOLA,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY GOERING, judge. Submitted without oral argument. Opinion filed December 5, 2025. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HURST, P.J., GARDNER and BOLTON FLEMING, JJ.

PER CURIAM: Michael A. Chighisola appeals the Sedgwick County District Court's denial of his K.S.A. 60-1507 motion after a nonevidentiary preliminary hearing. At that hearing, he argued that his sentence is illegal because two prior criminal threat convictions should not have been included in his criminal history score. We consider this argument as a motion to correct an illegal sentence. After review, we affirm the district court's denial of Chighisola's motion to correct an illegal sentence.

1

FACUTAL AND PROCEDURAL BACKGROUND

In 2016, a jury found Chighisola guilty of two counts of rape and one count of aggravated criminal sodomy for his repeated sex acts with a nine-year-old girl. The general facts supporting that conviction are set out in his direct appeal of those convictions in *State v. Chighisola*, No. 117,033, 2018 WL 6253189, at *1 (Kan. App. 2018) (unpublished opinion). We need not repeat them here.

At his sentencing, the district court calculated Chighisola's criminal history score to be A because three of Chighisola's 34 prior convictions were scored as person felonies. See K.S.A. 21-4709 (Torrence 2007). These three person felonies were "Fleeing or Attempting to Elude an Officer" in 2002 and two "Criminal Threat" convictions in 2006. Chighisola did not object to his criminal history score then.

As a result of his A criminal history score, the district court sentenced Chighisola to 620 months to life in prison on one of the rape convictions. For the remaining rape and aggravated criminal sodomy convictions, the district court sentenced Chighisola to a hard 25. See K.S.A. 21-4643(a)(1)(B), (a)(2)(B) (Torrence 2007). The district court ordered all counts to run concurrently.

Chighisola appealed to this court. In that appeal, he raised five claims challenging his convictions and that the errors deprived him of a fair trial. *Chighisola*, 2018 WL 6253189, at *2. In 2018, a panel of this court upheld his convictions. 2018 WL 6253189, at *15. Chighisola petitioned for review by the Kansas Supreme Court, but that petition was denied on December 19, 2019, and the mandate was filed on January 10, 2020.

In December 2020, Chighisola filed a timely K.S.A. 60-1507 motion, raising five claims. None of them alleged that his sentence was illegal. But he was later appointed counsel who stated at a status conference in November 2021 that he wished to add an

2

illegal sentence claim to Chighisola's motion. He contended that if Chighisola's prior criminal threat convictions were "reckless and therefore not scorable," his criminal history score could potentially be reduced from an A to a C because he would have two fewer prior person felonies. After the status conference, Chighisola and the State filed a joint "Pretrial Statement," which included this claim:

"E. Is the sentence imposed in Sedgwick County case 15CR2462 illegal in that [Chighisola's] past criminal threat convictions were scored as person felonies contrary to the holding in *State v. Boettger*, 310 Kan. 800, 450 P.3d 805, (2019) citing *Virginia v. Black*, 538 U.S. 343 (2003)?"

In June 2023, the district court held a nonevidentiary preliminary hearing on Chighisola's 1507 motion. At that hearing, Chighisola's attorney reiterated his position that *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019), warranted sentencing relief. The State responded that the legality of a sentence is controlled by the law in effect at the time the sentence was pronounced, which was in 2016, and because *Boettger* was not decided until 2019, it did not apply.

Ultimately, the district court found that an evidentiary hearing was not necessary and denied all claims in Chighisola's 1507 motion. As for the illegal sentence claim, the district court found no evidence that the sentence was illegal and noted that Chighisola was "sentenced consistent with the law that applied to his case at the time, maybe it's not fair he doesn't get the advantage of the *Boettger* decision. That's beyond my pay grade."

Chighisola now timely appeals the denial of his motion for an illegal sentence.

3

On appeal, Chighisola raises one argument—that the district court erred by determining that *Boettger* did not apply to his sentence. He treats his sentencing challenge as a motion to correct an illegal sentence. He argues that on the date *Boettger* was issued, his sentence was not yet final, so *Boettger* applies, meaning his prior criminal threat convictions cannot be included in his criminal history score. Thus, the district court erred by denying him sentencing relief. Chighisola makes no other argument about the denial of his K.S.A. 60-1507 motion. As a result, any other arguments are waived and abandoned. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021) (issues not adequately briefed deemed waived or abandoned); *Brown v. State*, No. 123,905, 2023 WL 8109588, at *6 (Kan. App. 2023) (unpublished opinion) (applying *Gallegos* in the context of a K.S.A. 60-1507 motion).

The State responds (1) that Chighisola cannot benefit from the change in the law under *Boettger* because we apply the law in effect when his sentence was pronounced and *Boettger* did not become final until after his sentence became final; (2) that even if *Boettger* applies, Chighisola failed to meet his burden under K.S.A. 21-6814(c) to prove that his sentence was illegal; (3) the unconstitutional means of criminal threat merged with the constitutional means, so even if one means could result in a prior conviction not being used for criminal history purposes, the constitutional means remains valid, so the conviction may be used in his criminal history; and (4) alternatively, *Boettger* and *State v. Smith*, 320 Kan. 62, 563 P.3d 697 (2025), were wrongly decided.

*Did the district court err by denying Chighisola's motion to correct an illegal sentence?*

Chighisola's argument that his sentence is illegal comes to this panel by way of a K.S.A. 60-1507 proceeding, but we consider it to be a motion to correct an illegal sentence. See K.S.A. 22-3504(a) ("The court may correct an illegal sentence at any time

while the defendant is serving such sentence."). Whether a sentence is illegal is a question of law over which appellate courts exercise unlimited review. To the extent resolution of Chighisola's argument requires interpretation of a statute, this court's review is also unlimited. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

The Kansas Sentencing Guidelines use a combination of a person's criminal history and the severity level of the crime of conviction to determine the presumptive sentencing range for that offense. See K.S.A. 21-6804. A person's criminal history for sentencing purposes generally includes any previous felony and misdemeanor convictions. See K.S.A. 21-6810(c). These prior convictions are classified as "person" or "nonperson" crimes. See K.S.A. 21-6810(c), (d); K.S.A. 21-6811(e). The classified prior convictions are tallied, with the number of specific types of crimes resulting in a more severe criminal-history score. See K.S.A. 21-6809. For example, three prior person felony convictions result in a criminal history score of A, while one prior person felony conviction results in a criminal history score of C. K.S.A. 21-6809. The lower one's criminal history score, the lower the presumptive sentencing range. See K.S.A. 21-6804 (sentencing grid for nondrug crimes); K.S.A. 21-6805 (sentencing grid for drug crimes).

An illegal sentence is defined as a sentence that (1) is imposed by a court without jurisdiction; (2) does not conform to the applicable statutory provision, either in character or the term of punishment; or (3) is ambiguous about the time and manner in which it is to be served. K.S.A. 22-3504(c)(1); see *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015) (explaining when district court improperly classifies a prior conviction for purposes of determining defendant's criminal history score, an illegal sentence results). Chighisola asserts that his sentence does not conform to the applicable statutory provisions because two of his prior criminal threat convictions should not have been classified as person felonies. As he argues, if his two prior criminal threat convictions had not been included in his criminal history score, then his 620-month

5

sentence (which is approximately 51-and-a-half years in prison) would have instead been controlled by the hard 25 life-term rule. See K.S.A. 21-4643(a)(1)(B), (a)(2)(B) (Torrence 2007).

Chighisola relies on *Boettger*, 310 Kan. at 822-23, where the Kansas Supreme Court held that the portion of the statute defining the crime of reckless criminal threat was unconstitutionally overbroad because it punishes conduct that is constitutionally protected under some circumstances, overruling this court's contrary finding in *State v. Boettger*, No. 115,387, 2017 WL 2709790, at *5 (Kan. App. 2017) (unpublished opinion). See *State v. Johnson*, 310 Kan. 835, 842, 450 P.3d 790 (2019) ("In *Boettger*, we hold that the reckless disregard provision encompasses more than true threats and thus potentially punishes constitutionally protected speech. The reckless disregard provision is thus overbroad and unconstitutional.").

The statute at issue in *Boettger* was K.S.A. 2018 Supp. 21-5415(a)(1). It defined "criminal threat" to include a threat to "[c]ommit violence communicated with intent to place another in fear . . . or in reckless disregard of the risk of causing such fear." When Chighisola committed his two criminal threat crimes in 2005, Kansas law defined the crime as any threat to "[c]ommit violence communicated with intent to terrorize another . . . or in reckless disregard of the risk of causing such terror." K.S.A. 2005 Supp. 21-3419(a)(1). A comparison of these two statutes shows that the Legislature left the mental states the same and changed the word "terrorize" to "place another in fear." But both reckless criminal threat and intentional criminal threat are present in K.S.A. 2005 Supp. 21-3419(a)(1).

Under *Boettger*, if a criminal threat conviction was based on the reckless mental state, the conviction cannot be counted in one's criminal history because that statute is unconstitutionally overbroad. See *State v. Phipps*, 63 Kan. App. 2d 698, 698-99, 539 P.3d 227 (2023), *appeal dismissed* 320 Kan. 616, 570 P.3d 1240 (2025). But the State argues

6

that the United States Supreme Court effectively overruled *Boettger* in *Counterman v. Colorado*, 600 U.S. 66, 81-82, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023). *Counterman* held that the First Amendment requires proof of a defendant's subjective understanding of the threatening nature of a statement to be punished as a crime, but a mental state of recklessness is sufficient to establish a true threat. 600 U.S. at 78-80. And we are duty bound to follow controlling United States Supreme Court precedent. See *State v. Davidson*, 314 Kan. 88, 91, 495 P.3d 9 (2021); *State v. Kornelson*, 311 Kan. 711, 715, 466 P.3d 892 (2020); *State v. Lawson*, 296 Kan. 1084, Syl. ¶ 1, 297 P.3d 1164 (2013) ("The United States Supreme Court's interpretation of the United States Constitution is controlling upon and must be followed by state courts.").

The Kansas Supreme Court's recent decision in *Smith*, 320 Kan. at 90-91, interpreted and applied K.S.A. 21-6810(d)(9). That statute provides that "'[p]rior convictions of a crime defined by a statute that has since been determined unconstitutional by an appellate court shall not be used for criminal history scoring purposes.'" 320 Kan. at 90. The *Smith* court held:

> "If a prior conviction arose under a statute 'that has since been determined unconstitutional by an appellate court,' it cannot be counted in a criminal history score. Nothing in the plain language of the statute qualifies this limitation by considering *subsequent repudiations* of an appellate court's holding that a statute is unconstitutional." 320 Kan. at 91.

The *Smith* court found the impact of *Counterman* on *Boettger* irrelevant because *Counterman* did not rule the Kansas statute unconstitutional: "And while the parties argue at length as to whether *Counterman* . . . effectively overruled *Boettger*, this consideration is irrelevant under the plain language of K.S.A. 21-6810(d)(9), which asks *only* whether an appellate court 'has since' ruled the statute unconstitutional—not whether that holding remains good law." *Smith*, 320 Kan. at 91. As a result, *Smith* upholds continued reliance on *Boettger*. The parties cite *Phipps*, 63 Kan. App. 2d at 699, but we

7

do not rely on that case because after our Supreme Court filed 320 Kan. 616, the court recently granted a motion for rehearing in it.

So under *Smith* and K.S.A. 21-6810(d)(9), if the prior conviction arose under the "intentional" clause of the statute that remained constitutional after *Boettger*, then it is properly included in the offender's criminal history. But if the prior conviction arose under the "reckless" portion of the statute, then it must be excluded from the offender's criminal history. See K.S.A. 21-3419.

*A change in law generally applies to cases not final on the date of the appellate court decision.*

The State argues that *Boettger* does not apply to Chighisola's sentence because *Boettger* was not final on the date Chighisola's sentence became final. But that is not what our precedent requires. Instead, we look to the finality of the challenged sentence, not the finality of the change in the law. As explained in *Lindemuth*: "Generally, when an appellate court decision changes the law, that change acts prospectively and applies to all cases pending on direct review or not yet final on the date of the appellate court decision." *State v. Lindemuth*, 312 Kan. 12, 16, 470 P.3d 1279 (2020).The Supreme Court's decision in *Boettger* changed the law when it was decided on October 25, 2019, yet Chighisola's sentence did not become final until January 10, 2020—the date the mandate issued in his direct appeal. Because Chighisola's case was not yet final on the date of the decision in *Boettger*, *Boettger* generally applies.

*No evidence supports a determination of reckless or intentional criminal threat.*

The State next contends that even if *Boettger* applies, Chighisola fails to meet his burden of proof that his prior convictions were for reckless criminal threat. Because the Kansas Supreme Court in *Boettger* invalidated the portion of Kansas' criminal threat

statute proscribing reckless criminal threats as unconstitutional, and because Kansas law forbids convictions arising under statutes that have since been found unconstitutional from being used for criminal history purposes, Chighisola argues that his prior criminal threat conviction could not be included in his criminal history score absent proof that his conviction was for intentional criminal threat. See K.S.A. 21-6810(d)(9); *Smith*, 320 Kan. at 91; *Boettger*, 310 Kan. at 822-23.

Chighisola concedes that he was "charged under an alternate means theory of criminal threat" and he does not claim that his convictions arose only under the reckless means of criminal threat. Still, we decline the State's invitation to consider that argument waived and we focus on whether Chighisola has met his burden of proof.

Since Chighisola did not challenge his criminal history score at sentencing, he bears the burden to prove that he was convicted under a version of the criminal threat statute that has since been determined unconstitutional by an appellate court. He raised his challenge after sentencing, yet still before the district court, so K.S.A. 21-6814(c) applies.

> "(c) Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet. Such notice shall specify the exact nature of the alleged error. The state shall have the burden of proving the disputed portion of the offender's criminal history. The sentencing judge shall allow the state reasonable time to produce evidence to establish its burden of proof. If the offender later challenges such offender's criminal history, which has been previously established, the burden of proof shall shift to the offender to prove such offender's criminal history by a preponderance of the evidence." K.S.A. 21-6814(c).

The last sentence of this statute describes the procedural status here. Chighisola did not challenge his criminal history during sentencing when the State bore the burden

of proof. Because he "later challenges" his criminal history but did not do so for the first time on appeal, which would make K.S.A. 21-6814(d) applicable, the burden of proof has shifted to him to prove his criminal history by a preponderance of the evidence.

Tacitly recognizing that he bears the burden of proof at this point, Chighisola directs this court to documents related to his prior criminal threat convictions. When, as here, the PSI report alone does not establish which version of the offense the defendant committed, and the defendant brings his motion in the district court, the court applies the "modified categorical approach." See *State v. Obregon*, 309 Kan. 1267, 1274, 444 P.3d 331 (2019). That approach allows the court to examine the charging documents of the prior case, any plea agreements, transcripts of plea hearings, findings of fact and conclusions of law from any bench trial, as well as jury instructions and completed verdicts, to determine which statutory alternative formed the basis for conviction. See 309 Kan. at 1274 (discussing the modified categorical approach in relation to alternative means out-of-state crimes). A similar approach is reflected in K.S.A. 21-6814(d), when a defendant challenges his or her criminal history for the first time on appeal. In that event, this court "may take judicial notice of such journal entries, complaints, plea agreements, jury instructions and verdict forms for Kansas convictions" when determining whether prejudicial error exists. K.S.A. 21-6814(d).

Chighisola did not dispute his criminal history score at sentencing. He first raised it in his later K.S.A. 60-1507 motion filed by counsel. Yet, at the 1507 preliminary hearing, Chighisola provided no evidence that his now disputed 2006 criminal threat convictions fell under the reckless portion of K.S.A. 2005 Supp. 21-3419.

Chighisola attempts to remedy this failure before the district court by appending to his appellate brief several official documents related to prior criminal threat convictions —the complaint, the plea journal entry, the plea agreement, and the case

summary. But he relies on K.S.A. 21-6814(d) to support his assertion that this court can now consider these documents. That subsection states:

> "If an offender raises a challenge to the offender's criminal history for the first time on appeal, the offender shall have the burden of designating a record that shows prejudicial error. If the offender fails to provide such record, the appellate court shall dismiss the claim. In designating a record that shows prejudicial error, the offender may provide the appellate court with journal entries of the challenged criminal history that were not originally attached to the criminal history worksheet, and the state may provide the appellate court with journal entries establishing a lack of prejudicial error. The court may take judicial notice of such journal entries, complaints, plea agreements, jury instructions and verdict forms for Kansas convictions when determining whether prejudicial error exists. The court may remand the case if there is a reasonable question as to whether prejudicial error exists." K.S.A. 21-6814(d).

When applicable, this subsection authorizes this court to consider the complaint, the plea journal entry, and the plea agreement, but not the case summary.

Yet the first clause of subsection (d) shows that Chighisola's reliance on this subsection is in error—"[i]f an offender raises a challenge to the offender's criminal history for *the first time on appeal*." (Emphasis added.) Chighisola is not challenging his criminal history for the first time on appeal. He challenged it at the district court level, so K.S.A. 21-6814(d) does not apply. And he failed to challenge it at sentencing, when the burden of proof would have rested squarely on the State. See K.S.A. 21-6814(c).

Nor will we consider those documents absent statutory authority to do so. Although K.S.A. 21-6814(d) authorizes us to "take judicial notice of such journal entries, complaints, plea agreements, jury instructions and verdict forms for Kansas convictions when determining whether prejudicial error exists" *when the sentencing issue is raised for the first time on appeal*, no similar statutory authorization exists for us to do so when

a sentencing issue is raised to the district court after sentencing, as here. See K.S.A. 21-6814(c). We are thus bound by our general rule that we cannot consider documents attached to a brief because such material is not part of the record on appeal. Kansas Supreme Court Rule 6.02(b) (2025 Kan. S. Ct. R. at 36) ("The appendix is for the court's convenience and is not a substitute for the record itself."); see *Edwards v. Anderson Engineering, Inc.*, 284 Kan. 892, 895, 166 P.3d 1047 (2007). This makes sense, as the parties have a full, fair opportunity to make their case by producing evidence either to the district court when the issue is raised there, or to the appellate court when the issue is first raised here, but neither party gets a second bite at the apple.

Still, even if we are incorrect and we may take judicial notice of all the documents appended to Chighisola's brief and reply brief, none of them tend to show that he demonstrated to the district court that he was convicted of reckless criminal threat rather than intentional criminal threat. Both prior threats were charged in the alternative as intentional or reckless and neither the journal entries nor the plea agreements specify one or the other.

Chighisola has thus shown us nothing to suggest that he demonstrated to the district court that his prior criminal threat convictions were improperly included in his criminal history. We are left with Chighisola's concession that he was charged under both reckless criminal threat and intentional criminal threat. He has thus failed to meet his burden under K.S.A. 21-6814(c) to prove by a preponderance of the evidence that either of his criminal threat convictions was based on the reckless portion of the criminal threat statute that has been declared unconstitutional. See *Daniels*, 319 Kan. at 349-50 (defendant failed to carry burden to show his criminal history was improperly calculated). The district court's decision was thus right for a different reason. *State v. May*, 293 Kan. 858, 870, 269 P.3d 1260 (2012).

12

We have resolved the sole argument raised by the appellant. We find it unnecessary under these facts of this case to consider the remaining arguments raised by the State: that the Kansas Supreme Court wrongly decided *Smith* and *Boettger*; and that the merger doctrine in *State v. Vargas*, 313 Kan. 866, 875, 492 P.3d 412 (2021) (alternatively charged counts merge into a single conviction), applies.

Affirmed.