NOT DESIGNATED FOR PUBLICATION

No. 126,780

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SAMUEL GARCIA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER and JEFFRY J. LARSON, judges. Submitted without oral argument. Opinion filed January 16, 2026. Sentences vacated, and case dismissed in part and remanded with directions.

*Sam Schirer*, of Capital Appeals and Conflicts Office, for appellant.

*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., COBLE, J., and SEAN M.A. HATFIELD, District Judge, assigned.

PER CURIAM: Samuel Garcia pleaded no contest to serious felony crimes. At sentencing, the district court included a prior criminal threat conviction in Garcia's criminal history score calculation without objection by either party. The district court also declined to award Garcia any jail time credit because he was serving a sentence on another case. Garcia now appeals, arguing the district court erred in determining both his criminal history score and jail time credit. He also claims that the district court erred by imposing on him a standard sentence rather than following the plea agreement's

1

recommended lesser prison sentence without providing him an opportunity to withdraw his plea. For the reasons explained below, we lack jurisdiction over his appeal of his guideline sentences and dismiss that claim, his sentences are vacated, and we remand the case for further proceedings to allow the district court to examine Garcia's criminal history score and the jail time credit he may be due.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2022, the State charged Garcia with conspiracy to commit first-degree murder, first-degree murder, aggravated robbery, conspiracy to commit aggravated robbery, theft of property, arson, and interference with a law enforcement officer. At the time the warrant was served, Garcia was already in Kansas Department of Corrections custody.

In May 2023, Garcia entered into a plea agreement with the State. Garcia agreed to plead no contest to the amended charges of conspiracy to commit first-degree murder, second-degree murder, and conspiracy to commit aggravated robbery. The State agreed to dismiss the other charges in exchange for the plea and to jointly request a durational departure sentence on the grounds that Garcia's criminal history score would have been G at the time of the offense and that he was 17 years old when the present offenses occurred. The plea agreement recommended that the sentences run consecutive to one another for a total of 360 months in prison. Garcia was free to argue additional departure factors but agreed to waive his right to appeal or collaterally attack the convictions or the legal sentences.

During the plea hearing, the district court verified that Garcia read and reviewed the terms of the no contest plea with his counsel and understood those terms. Garcia acknowledged he understood the trial and appeal rights he was forfeiting and that the district court could order a sentence that was different from the plea agreement. The court

2

also notified Garcia of the maximum sentence he was facing for each charge. The district court orally confirmed that Garcia understood the court was not bound by the sentencing recommendation of 360 months in the plea agreement. After the plea colloquy, the district court accepted Garcia's no contest plea, finding that it was made knowingly and voluntarily, and convicted him of all three charges.

Before sentencing, Garcia sought a durational departure of 240 months in prison. At the sentencing hearing two months later, after hearing arguments from both parties, the district court made a detailed finding on each of the mitigating factors presented in Garcia's motion. While finding some of the factors cited by Garcia supported departure, the district court found them to be uncompelling in light of the facts of the case and denied Garcia's motion for departure.

When asked, neither party objected to the district court's finding that Garcia's criminal history score was A or sought any changes or corrections to the presentence investigation (PSI) report. The district court imposed standard sentences on each count: 620 months for second-degree murder; 117 months for conspiracy to commit first-degree murder; and 32 months for conspiracy to commit aggravated robbery, all to run concurrent with each other for a controlling term of 620 months in prison. The district court also ordered this sentence to run consecutive to Garcia's prior sentence in case No. 2017-CR-515. The district court denied Garcia jail time credit because he was already serving the prison sentence for the 2017 case at the time this sentence was pronounced.

After sentencing, Garcia moved to set aside his sentences, claiming that the district court rejected the plea agreement and denied the motion for durational departure sentence on improper bases, the district court was not impartial, and the State breached the plea agreement. In a memorandum order, the district court denied Garcia's motion on all grounds.

Garcia timely appeals his sentences.

WE CANNOT DETERMINE WHETHER THE DISTRICT COURT ERRED IN CALCULATING GARCIA'S CRIMINAL HISTORY BY INCLUDING A PRIOR CRIMINAL THREAT CONVICTION

Garcia first argues that his sentences are illegal because the district court included his prior criminal threat conviction when determining his criminal history score. He claims that K.S.A. 21-6810(d)(9) prohibits the sentencing court from considering his prior criminal threat conviction because our Supreme Court has held the criminal threat statute to be unconstitutional.

A sentence is illegal if it (1) is imposed by a court lacking jurisdiction, (2) fails to conform to applicable statutory provisions, or (3) is ambiguous with respect to the time and way it is to be served. K.S.A. 22-3504(c)(1). Whether a sentence is illegal is a question of law over which appellate courts exercise unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024). To the extent the criminal history classification of prior convictions requires interpretation of statutes, our review is also unlimited. 319 Kan. at 342.

Garcia concedes he did not object to the district court's calculation of his criminal history score. Regardless, an illegal sentence may be corrected at any time while the defendant is serving such sentence. K.S.A. 22-3504(a); *State v. Gomez*, 320 Kan. 3, 22, 561 P.3d 908 (2025). Garcia is also allowed to challenge his criminal history for the first time on appeal under K.S.A. 21-6814(d). As a result, we may consider Garcia's challenge to the classification of his prior criminal threat conviction for the first time on appeal.

*Criminal history score determination and criminal threat convictions*

The revised Kansas Sentencing Guidelines Act (KSGA) establishes presumptive sentences for crimes subject to the Act. Scores are based on an offender's criminal

4

history, using a combination of a person's criminal history and the severity level of the crime of conviction, and are scored from I (lowest) to A (highest). See K.S.A. 21-6804 (nondrug offense grid). Prior convictions are also classified as "person" or "nonperson" crimes. See K.S.A. 21-6810(a), (d); K.S.A. 21-6811(e)(3). The classified prior convictions are tallied, with greater number and severity of crimes resulting in a higher criminal history score. See K.S.A. 21-6809. For example, an offender with one prior person felony conviction will have a criminal history score of C, while an offender with three or more adult convictions for person felonies will have a criminal history score of A. K.S.A. 21-6809. If a criminal history score is not correct, the resulting sentence does not conform to the statute and is an illegal sentence. *State v. Neal*, 292 Kan. 625, 631, 258 P.3d 365 (2011).

Under Kansas law, criminal threat includes any threat to "[c]ommit violence communicated with intent to place another in fear . . . or in reckless disregard of the risk of causing such fear." K.S.A. 21-5415(a)(1). This definition has remained unchanged since 2011. But our Supreme Court in *State v. Boettger*, 310 Kan. 800, 822-23, 450 P.3d 805 (2019) held that the "reckless disregard" portion of the criminal threat statute was unconstitutionally overbroad because it could apply to statements made without the intent to cause fear of violence. In *State v. Johnson*, 310 Kan. 835, 842, 450 P.3d 790 (2019), our Supreme Court reinforced *Boettger*, stating that "the reckless disregard provision encompasses more than true threats and thus potentially punishes constitutionally protected speech. The reckless disregard provision is thus overbroad and unconstitutional." Applying *Boettger*, if the prior criminal threat conviction was based on the "reckless" provision, the conviction could not be considered in the criminal history score determination because that portion of the statute has been declared unconstitutionally overbroad.

But the United States Supreme Court took a different view in *Counterman v. Colorado*, 600 U.S. 66, 81-82, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023). In

5

*Counterman*, the Court held that the First Amendment demands proof of the defendant's subjective understanding of the threatening nature of their statements to prosecute a case. 600 U.S. at 76-78. The Court held recklessness—the mental state where a person consciously disregards a substantial and unjustifiable risk that their conduct will cause harm to another—is sufficient to establish a true threat unprotected by the First Amendment. 600 U.S. at 79.

More recently, in the wake of *Counterman*, the Kansas Supreme Court provided guidance in interpreting and applying K.S.A. 21-6810(d)(9), which prohibits "[p]rior convictions of a crime defined by a statute that has since been determined unconstitutional by an appellate court" to be used for criminal history scoring purposes. In *State v. Smith*, 320 Kan. 62, 90, 563 P.3d 697 (2025), our Supreme Court found that a literal reading of K.S.A. 21-6810(d)(9) directs that a reckless criminal threat conviction cannot be considered in a criminal history score. The court explained:

> "If a prior conviction arose under a statute 'that has since been determined unconstitutional by an appellate court,' it cannot be counted in a criminal history score. Nothing in the plain language of the statute qualifies this limitation by considering *subsequent repudiations* of an appellate court's holding that a statute is unconstitutional." 320 Kan. at 91.

So, then, applying *Smith* and K.S.A. 21-6810(d)(9), a prior criminal threat conviction cannot be included in determining a criminal history score if it falls under the reckless portion of the statute because *Boettger* held that portion of the statute unconstitutional. That said, if the prior criminal threat conviction was under the intentional portion of the statute, which remained constitutional after *Boettger*, it may properly be included in the offender's criminal history score.

The difficulty with the criminal threat statute in the context of a PSI report is that it combines both intentional and reckless threats into a single subsection, K.S.A. 21-

6

5414(a)(1). This makes it impossible for the sentencing court to discern from the PSI report alone whether a prior criminal threat conviction was for the "constitutional" intentional threat or the "unconstitutional" reckless threat.

On appeal, Garcia initially argued that his criminal threat conviction should not have been included in his criminal history score under *Boettger.* At the time the parties filed their briefs, *Smith* had not been decided. In light of *Smith*, Garcia then filed a letter under Supreme Court Rule 6.09(a)(1) (2025 Kan. S. Ct. R. at 40), providing *Smith* as additional authority in support of his claim. Garcia argues that because *Smith* upheld that the district court is barred from scoring reckless criminal threat convictions in a defendant's criminal history score, he is entitled to relief on his criminal history challenge. The State did not respond to Garcia's 6.09(a)(1) letter and provides no argument addressing *Smith*.

*Garcia raises a reasonable question.*

When an offender challenges criminal history for the first time on appeal, the burden lands squarely on that offender to designate a record that shows prejudicial error, or the appellate court shall dismiss the appeal. K.S.A. 21-6814(d). The offender can provide journal entries of the challenged convictions to show prejudicial error, and the State can provide journal entries to show a lack of prejudicial error. K.S.A. 21-6814(d). In addition, K.S.A. 21-6814(d) allows an offender to produce a limited list of documents to meet their burden, allowing the court to "take judicial notice of such journal entries, complaints, plea agreements, jury instructions and verdict forms for Kansas convictions when determining whether prejudicial error exists." This same section specifies that "[t]he court *may* remand the case if there is a reasonable question as to whether prejudicial error exists." (Emphasis added.) K.S.A. 21-6814(d).

In his attempt to show prejudicial error, Garcia included additional court documents as attachments to his brief on appeal. He attached both his complaint and second amended complaint from case No. 2017-CR-515 showing he was charged with criminal threat under K.S.A. 21-5415(a)(1), and his plea agreement and journal entry from the same case, showing he pleaded guilty to criminal threat under the same statutory section. But none of the permitted documents delineate which subsection of K.S.A. 21-5415(a)(1) he was charged and convicted under, so these documents do not clarify whether his previous criminal threat conviction was for reckless or intentional criminal threat. Likewise, the PSI report does not distinguish between reckless or intentional criminal threat.

Because Garcia has offered the journal entry, complaints, and plea agreement—the only documents he is permitted to offer to support his burden under K.S.A. 21-6814(d)—but these documents do not conclusively show whether Garcia was previously convicted of reckless or intentional criminal threat, it is possible that the conviction was for reckless criminal threat. K.S.A. 21-6814(d) allows this court to remand if we find "there is a reasonable question as to whether prejudicial error exists."

Another panel of our court remanded a case to the district court under similar circumstances. *State v. Lawson*, No. 126,008, 2024 WL 2104651 (Kan. App.) (unpublished opinion), *rev. denied* 319 Kan. 835 (2024). There, although Lawson admitted his criminal history score at sentencing, he challenged its calculation for the first time on appeal and provided journal entries from his prior convictions, as permitted under K.S.A. 21-6814(d), as part of his appeal. But because the journal entries from his prior convictions that Lawson provided did not reveal whether he was convicted of intentional or reckless criminal threat, our court found that he raised a reasonable question as to whether prejudicial error existed. Our court vacated Lawson's sentence and remanded the case "to allow Lawson the opportunity to persuade the district court as to the correct scoring of his criminal history." 2024 WL 2104651, at *3.

8

Because the documents Garcia was permitted to provide on appeal only suggest a question as to whether he was convicted of a crime under a statutory subsection which has since been found unconstitutional, we find Garcia has, at minimum, raised a reasonable question. As a result, we vacate his sentences and remand this case to the district court for additional findings to permit Garcia—whose burden it remains—the chance to convince the district court as to the correct scoring of his criminal history.

THE DISTRICT COURT ERRED BY NOT AWARDING GARCIA JAIL TIME CREDIT

We next address Garcia's argument that the district court erred by refusing to award jail time credit against his sentence.

The right to jail time credit in Kansas is statutory, governed by K.S.A. 21-6615(a), which states that when a defendant is convicted and sentenced to confinement, that sentence should be computed to "reflect . . . an allowance for the time that the defendant has spent incarcerated pending the disposition of the defendant's case." Statutory interpretation presents a question of law over which this court conducts an unlimited review. *State v. Davis*, 312 Kan. 259, 267, 474 P.3d 722 (2020).

Initially citing solely our Supreme Court's opinion in *State v. Hopkins*, 317 Kan. 652, 537 P.3d 845 (2023), Garcia argues that the district court's basis for refusing him jail time credit was erroneous. He claims the district court provided no rationale for denying him credit other than referring to his prison sentence in another case.

Our Supreme Court's decision in *Hopkins* in 2023 overturned the longstanding "held-solely-on" rule established by *Campbell v. State*, 223 Kan. 528, Syl. ¶¶ 1-2, 575 P.2d 524 (1978) (requiring a sentencing judge to award a defendant credit for all time spent in custody "solely" on the charge for which they were being sentenced while awaiting disposition of their case, and not giving credit for time "spent in jail upon other,

9

distinct, and wholly unrelated charges"). The new rule eliminated the need for judges to make factual determinations as to whether the defendant was held solely pending the crime of conviction. *Hopkins*, 317 Kan. 656. Instead, the simplified rule now simply requires judges to compute the total time spent in jail while the case was pending and award it as jail time credit against the sentence. 317 Kan. 659.

Our Supreme Court recently decided in *State v. Ervin*, 320 Kan. 287, 311, 566 P.3d 481 (2025), that K.S.A. 21-6615 requires the district court to "award an allowance for all time spent incarcerated 'pending the disposition of the defendant's case.'" This means a defendant receives one day of credit for each day spent incarcerated pending disposition of their case, even if they "received an allowance for some or all that time against a sentence in another case." 320 Kan. at 312.

But, in two more recent cases from our court, the panels distinguished *Hopkins* and *Ervin* from the issue presented in those cases. *State v. Martin*, 66 Kan. App. 2d 173, 577 P.3d 667 (2025); *State v. Moritz*, No. 127,910, 2025 WL 2993736, at *2 (Kan. App.) (unpublished opinion), *petition for rev. filed* November 20, 2025. In *Ervin* and *Hopkins*, the defendants were not serving sentences for prior crimes but were being held on separate pending criminal charges while awaiting disposition of the cases that were the subject of their appeals. *Moritz*, 2025 WL 2993736, at *2. Yet Garcia, like defendants Martin and Moritz, asks whether he is entitled to jail time credit in his present case for the time he continued to be incarcerated—serving a sentence in an unrelated prior criminal case—while his present case was pending.

Here, the record indicates that Garcia was convicted on March 8, 2018, and was serving the imposed prison term in case No. 2017-CR-515 at the time of his arrest and eventual sentencing in the present case. The return on the arrest warrant indicates Garcia was in Kansas Department of Corrections (KDOC) custody when arrested on the present charges, and the record contains multiple instances showing Garcia was transported from

10

prison to the Lyon County Jail for court appearances. A detainer was filed in favor of the county, indicating Garcia would be detained because of this case, even if he were released early from his 2017 sentence.

At sentencing, the district court stated that "[s]ince he is currently serving a [prison] sentence, there will be no credit for time served applied to this case." The journal entry also reflects that no jail time credit was awarded. The record reflects that Garcia was convicted in his 2017 case in 2018, and he was charged in the present case on March 9, 2022. However, there are no other references in the record on appeal to the nature or details of his sentence in case No. 2017-CR-515.

If Garcia was specifically detained pending the disposition of the charges in this case, he might be entitled to jail time credit under *Ervin*. See *State v. Robinson*, No. 127,629, 2025 WL 3048957, at *3 (Kan. App.) (unpublished opinion) (remanding case to the district court to calculate Robinson's jail time credit, if any, given that he was not only serving his preexisting federal sentence at a federal penitentiary, but he was also held at different times in the county jail pending disposition of charges in the present case), *petition for rev. filed* December 1, 2025.

Because it is unclear from the record when Garcia may have been held on any detainers in this case while he was serving his prison sentence on his 2017 case, we vacate his sentences and remand to the district court to calculate Robinson's jail time credit, if any, in accordance with K.S.A. 21-6615 and *Ervin*.

WE LACK JURISDICTION TO CONSIDER
GARCIA'S CHALLENGE TO THE LENGTH OF HIS SENTENCE

Garcia next argues that the district court erred by not honoring the plea agreement to impose the agreed-upon recommended sentence. But Garcia must first overcome the

11

jurisdictional bar prohibiting this court's consideration of his claim. Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022).

Garcia's appeal of this issue does not come to us as an appeal of a postsentence motion to withdraw his plea. See K.S.A. 22-3210(d)(2) ("To correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea."). Although he claims that the district court should have afforded him the opportunity to withdraw his plea, Garcia fails to articulate this was his intent or that he was deterred from withdrawing his plea in some way.

As an appellate court, we have no jurisdiction to review "[a]ny sentence that is within the presumptive sentence for the crime." K.S.A. 21-6820(c)(1). See *State v. Albano*, 313 Kan. 638, 640, 487 P.3d 750 (2021) (appellate court ordinarily lacks jurisdiction to review presumptive sentences). A review of the record shows that the sentence imposed by the district court for each crime of conviction falls within the presumptive ranges under the KSGA, and Garcia concedes as much. Plainly, then, we lack jurisdiction to review his claim.

To overcome this jurisdictional hurdle, Garcia claims that this court should review his appeal under the exception set forth in *State v. Warren*, 297 Kan. 881, 304 P.3d 1288 (2013). *Warren* was a criminal appeal following a presumptive sentence, in which our Supreme Court found appellate review of presumptive sentences permitted in limited cases when the district court misinterprets its own statutory authority. 297 Kan. 881, Syl. ¶ 1 (appellate court may review a presumptive sentence where the district court refused to consider defendant's request for a downward departure sentence it had authority to impose). Garcia acknowledges that the issue on appeal here is not one of misinterpretation of a statute but reasons that the district court misinterpreted its authority

under caselaw he considers to be outdated—the *Byrd* rule. See *State v. Byrd*, 203 Kan. 45, 453 P.2d 22 (1969).

In *Byrd*, our Supreme Court first pronounced that "[a]ll plea discussions and agreements should be premised upon an understanding that such agreements are not binding upon the trial judge." 203 Kan. 50. Garcia now claims the *Byrd* rule is in desperate need of change because litigants aggrieved by the rule lack meaningful opportunity to challenge the 50-year-old authority. Garcia asks this court to exercise jurisdiction over this issue because the district court misunderstood its authority by relying on outdated authority that he contends "no longer reflects evolving" standards.

But we are duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). Other than Garcia's hypothesis that our Supreme Court would refine *Byrd*, if given the opportunity, because of new American Bar Association (ABA) guidance and evolving societal view on plea agreements, Garcia fails to present any indicia that our Supreme Court has pivoted away from *Byrd*. Although the standards set forth by the ABA merit respect in context of the legal practice and guiding principles, this court is in no way bound to consider its guidelines. We are, however, bound by our own Supreme Court's precedent and statutory restrictions.

As a result, we must abide by the longstanding rule that district courts are not bound by the plea agreement's recommended sentence as established in *Byrd*. We lack jurisdiction to reconsider the presumptive sentence imposed by the district court on Garcia's convictions and must dismiss this claim.

Sentences vacated, and case dismissed in part and remanded with directions.

13